1  KAREN P. HEWITT
   United States Attorney
2  CAROLINE P. HAN
   Assistant U.S. Attorney
3  California State Bar No. 250301
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Phone: (619) 557-5220
   Fax: (619) 235-2757
6  E-mail: caroline.han@usdoj.gov

7  Attorneys for Plaintiff
   United States of America
8
                    UNITED STATES DISTRICT COURT
9
                   SOUTHERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,    )  Criminal Case No. 08CR1694-WQH
                                 )
12            Plaintiff,         )  RESPONSE AND OPPOSITION TO
                                 )  DEFENDANT'S MOTIONS:
13       v.                      )
                                 )  (1) TO COMPEL SPECIFIC DISCOVERY
14  RICARDO HERRERA-ARTEAGA,     )  (2) TO SUPPRESS STATEMENTS
                                 )  (3) FOR LEAVE TO FILE ADDITIONAL
15                               )      MOTIONS
             Defendant.          )
16  _____)  Hon. William Q. Hayes
                                 )  June 18, 2008 at 2:00 pm
17

18          COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

19  United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby

20  files its Response and Opposition to Defendant's Motions to Compel Specific Discovery, to

21  Suppress Statements, and for Leave to File Additional Motions.  This Response and Opposition

22  is based upon the files and records of this case, together with the attached Statement of Facts, and

23  Memorandum of Points and Authorities.

24  //

25  //

26  //

27  //
    //
28
    //

# I

## STATEMENT OF FACTS

**A.** **Statement of the Case**

On May 23, 2008, a federal grand jury handed up a one-count Indictment charging Defendant Arvin Espinoza-Morales with Deported Alien Found in the United States in violation of Title 8, United States Code, Section 1326. The indictment also alleges that Defendant was removed from the United States subsequent to November 28, 2005. Defendant entered a not guilty plea before Magistrate Judge Nita L. Stormes on May 27, 2008.

**B.** **Statement of Facts**

**1. Defendant's Arrest**

On April 28, 2008 at approximately 5:50 am, United States Border Patrol (BP) Agent Roberto C. Garcia responded to a citizen's call that there was a person walking on State Route 94 approximately 5 1/4 miles west of the Tecate, California Port of Entry and four miles north of the U.S.-Mexican international border. The area is remote with rugged terrain, and the area is commonly traveled by illegal aliens in an effort to further their travel into the United States. At approximately 6:00 am, BP Agent Garcia found a person later identified as the defendant walking west on State Route 94. BP Agent Garcia identified himself as a Border Patrol agent in English and Spanish, and was also identifiable by the Border Patrol uniform he was wearing. In response to the agent's questions, the defendant stated that he was born in Mexico and was a citizen of Mexico. He further stated that he did not have any documentation that would allow him to enter or remain in the United States. Thereafter, BP Agent Garcia took the defendant into custody and transported him to the Brown Field Border Patrol station.

At the Brown Field Border Patrol station, the defendant was fingerprinted and his information was entered into immigration databases. Based on that, the defendant's identity and criminal history were confirmed, as well as that the defendant is a Mexican citizen with no legal documents to enter or remain in the United States. The defendant was informed of his administrative rights at approximately 6:40 am.

1

2          **2. Defendant's Statements**

3          At approximately 11:27 am, BP Agent Rene Campos advised the defendant that his

4    administrative rights no longer applied.  At approximately 11:29 am, the defendant was advised

5    of his <u>Miranda</u> rights by Agent Campos.  This was also witnessed by BP Agent Cary Caballero as

6    well as videotaped.  The defendant stated that he understood his rights, and agreed to waive those

7    rights.  The defendant stated that he understood that he was prosecuted criminally.  He also stated

8    that he had been removed on 3 prior occasions, and that his true name is Ricardo Herrera-Arteaga,

9    but he sometimes uses aliases.  The defendant added that he is a Mexican citizen and national, and

10   was born in Quitupan, Jalisco, Mexico.  He further stated that he has never possessed

11   documentation that would allow him to enter or remain legally in the United States.

12         The defendant also stated that he had illegally entered the United States on April 27, 2008

13   at 3:00 pm by walking in the mountains near Tecate, California.  He further stated that he was

14   attempting to go to El Cajon, California to find work.  Lastly, the defendant acknowledged his

15   criminal history and stated that he knew it was illegal to his re-enter the United States after being

16   deported.

17         **C. <u>Defendant's Criminal History</u>**

18         On November 28, 2005, the defendant was convicted of Deported Alien Found in the

19   United States in the Southern District of California and was sentenced to 51 months in prison.

20         On February 25, 1993, the defendant was convicted of Murder and Tampering with a

21   Witness in the Medford, Oregon District Court.  He was subsequently sentenced to 128 months.

22         On December 22, 1987, the defendant was convicted of Frequenting a Place Where a

23   Controlled Substance is Used Medford, Oregon District Court, and was sentenced to 45 days jail.

24         On June 30, 1985, the defendant was convicted of Petty Theft in Merced County Municipal

25   Court, and was sentenced to 30 days jail and 3 years probation.

26

27

28

                                              3       Criminal Case No. 08CR1694-WQH

## II

## MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE

The Government intends to continue full compliance with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal Rules of Criminal Procedure. To date, the Government has provided 158 pages of discovery as well as a DVD that includes the advisal of rights and the defendant's statement. The Government anticipates that all discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

### (1) Defendant's Statements

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant. In addition, the United States objects to the defendant's request for a certified transcript of the defendant's post-arrest statements. Rule 16 does not require the United States to do so, and there is no reason that has been specified for this request. As such, the request should be denied.

The Government has no objection to the preservation of the handwritten notes taken by any of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).

However, the Government objects to providing Defendant with a copy of the rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough

notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(2) Arrest reports, notes, dispatch tapes**

The Government has provided Defendant with all known reports related to Defendant's arrest in this case that are available at this time. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16. As previously noted, the Government has no objection to the preservation of the agents' handwritten notes, but objects to providing Defendant with a copy of the rough notes at this time because the notes are not subject to disclosure under Rule 16, the Jencks Act, or Brady. The United States is presently unaware of any dispatch tapes relating to the Defendant's arrest in this case.  In addition, the United States has already discovered a copy of the Report of Investigation for the defendant's case.

**(3) Information That May Result in a Lower Sentence Under the Guidelines** – The Government has provided and will continue to provide the defendants with all Brady material that may result in mitigation of the defendants' sentences.  Nevertheless, the Government is not required to provide information bearing on the defendants' sentences until after the defendants' convictions or guilty pleas and prior to their sentencing dates. See United States v. Juvenile Male,

1  864 F.2d 641, 647 (9th Cir. 1988) (no <u>Brady</u> violation occurs "if the evidence is disclosed to the

2  the defendants at a time when the disclosure remains in value").

3  **(4) Defendant's Prior Record**

4  The United States has already provided Defendant with a copy of any criminal record in

5  accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

6  **(5) Proposed 404(b) and 609 Evidence**

7  Should the United States seek to introduce any similar act evidence pursuant to Federal

8  Rules of Evidence 404(b) or 609(b), the United States will provide Defendant with notice of its

9  proposed use of such evidence and information about such bad act at or before the time the United

10  States' trial memorandum is filed. The United States reserves the right to introduce as prior act

11  evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

12  **(6) Evidence Seized**

13  The United States has complied and will continue to comply with Rule 16(a)(1)© in

14  allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

15  evidence which is within the possession, custody or control of the United States, and which is

16  material to the preparation of Defendant's defense or are intended for use by the United States as

17  evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

18  The United States, however, need not produce rebuttal evidence in advance of trial. <u>United</u>

19  <u>States</u> v. <u>Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

20  **(7) Tangible Objects**

21  The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

22  allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

23  tangible objects seized that are within its possession, custody, or control, and that are either

24  material to the preparation of Defendant's defense, or are intended for use by the Government as

25  evidence during its case-in-chief at trial, or were obtained from or belong to Defendant. The

26  Government need not, however, produce rebuttal evidence in advance of trial. United States v.

27  Givens, 767 F.2d 574, 584 (9th Cir. 1984).

28

6    Criminal Case No. 08CR1694-WQH

**(8) Reports of Scientific Tests or Examinations**

The United States is not aware of any scientific tests or examinations at this time but, if any scientific tests or examinations were conducted or are conducted in the future, the United States will provide Defendant with any reports of any such tests or examinations in accordance with Rule 16(a)(1)(F).

**(9) Expert Witnesses**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

**(10) Brady Material**

The Government has and will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the

1   defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995));

2   (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380,

3   389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the

4   undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or

5   control over. (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)). Nor does

6   Brady require the Government "to create exculpatory evidence that does not exist," United States

7   v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply

8   a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d

9   432, 438 (9th Cir. 1976). 1988) ("No [Brady] violation occurs if the evidence is disclosed to the

10  defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand

11  for

12  this information is premature.

13          **(11) Request for Preservation of Evidence**

14          After issuance of a an order from the Court, the United States will preserve all evidence

15  to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United

16  States objects to Defendant's blanket request to preserve all physical evidence. The United States

17  has complied and will continue to comply with Rule 16(a)(1)© in allowing Defendant an

18  opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is

19  within his possession, custody or control of the United States, and which is material to the

20  preparation of Defendant's defense or are intended for use by the United States as evidence in

21  chief at trial, or were obtained from or belong to Defendant, including photographs. The United

22  States has made the evidence available to Defendant and Defendant's investigators and will

23  comply with any request for inspection.

24          **(12) Witness Addresses**

25          The Government has already provided Defendant with the reports containing the names

26  of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-

27  capital case, however, has no right to discover the identity of prospective Government witnesses

28  prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974

1    F.2d 1502, 1522 (9th Cir 1992) (citing <u>United States</u> v. <u>Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985));

2    <u>United States</u> v. <u>Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum,

3    the Government will provide Defendant with a list of all witnesses whom it intends to call in its

4    case-in-chief, although delivery of such a witness list is not required. See <u>United States</u> v. <u>Discher</u>,

5    960 F.2d 870 (9th Cir. 1992); <u>United States</u> v. <u>Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).

6        The Government objects to any request that the Government provide a list of every witness

7    to the crimes charged who will not be called as a Government witness. "There is no statutory basis

8    for granting such broad requests," and a request for the names and addresses of witnesses who will

9    not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)©." <u>United States</u> v. <u>Hsin-</u>

10   <u>Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502

11   (D. Del. 1980)). The Government is not required to produce all possible information and evidence

12   regarding any speculative defense claimed by Defendant. <u>Wood</u> v. <u>Bartholomew,</u> 516 U.S. 1, 6-8

13   (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

14   of admissible exculpatory evidence are not subject to disclosure under Brady).

15       **(13) Jencks Act Material**

16       The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

17   on direct examination, the Government must give the Defendant any "statement" (as defined by

18   the Jencks Act) in the Government's possession that was made by the witness relating to the

19   subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks

20   Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

21   by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

22   oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes

23   are read back to a witness to see whether or not the government agent correctly understood what

24   the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks

25   Act. <u>United States</u> v. <u>Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg</u> v. <u>United</u>

26   <u>States</u>, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act

27   material after the witness testifies, the Government plans to provide most (if not all) Jencks Act

28   material well in advance of trial to avoid any needless delays.

1      **(14) Residual Request**

2         The Government will comply with all of its discovery obligations, but objects to the broad

3  and unspecified nature of Defendant's residual discovery request.

4      **(15) Evidence of Criminal Investigation of Any Government Witness**

5         Defendants are not entitled to any evidence that a prospective witness is under criminal

6  investigation by federal, state, or local authorities. "[T]he criminal records of such [Government]

7  witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

8  United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

9  of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

10  States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

11  the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a

12  defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542

13  F.2d at 1026).

14         The Government will, however, provide the conviction record, if any, which could be used

15  to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such

16  information, disclosure need only extend to witnesses the United States intends to call in its case-

17  in chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607

18  F.2d 1305, 1309 (9th Cir. 1979).

19      **(16) Evidence of Bias or Motive To Lie**

20         The United States is unaware of any evidence indicating that a prospective witness is

21  biased or prejudiced against Defendant. The United States is also unaware of any evidence that

22  prospective witnesses have a motive to falsify or distort testimony.

23      **(17) Evidence Affecting Perception, Recollection, Ability to Communicate, or**

24      **Truth Telling**

25         The United States is unaware of any evidence indicating that a prospective witness has a

26  problem with perception, recollection, communication, or truth-telling. The United States

27  recognizes its obligation under Brady and Giglio to provide material evidence that could be used

28  to impeach Government witnesses including material information related to perception,

recollection or ability to communicate. The Government objects to providing any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

### (18) Names of Witnesses Favorable to the Defendant

The Government willl comply with its obligations under <u>Brady</u> and its progeny. At the present time, the Government is not aware of any witnesses who have made an arguably favorable statement concerning the defendant.

### (19) Statements Relevant to the Defense

The United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted).

### (20) Giglio Information

As stated previously, the United States will comply with its obligations pursuant to <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States</u> v. <u>Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and <u>Giglio</u> v. <u>United States</u>, 405 U.S. 150 (1972).

### (21) <u>Giglio Information and Agreements Between the Government and Witnesses</u>

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under <u>Brady</u> and <u>Giglio</u>. <u>See</u> <u>United States v. Kojayan</u>, 8 F.3d 1315, 1322-23 (9th Cir. 1993); <u>Benn v. Lambert</u>, 238 F.3d 1040, 1054-60 (9th Cir. 2002). As stated above, the Government will provide any <u>Giglio</u> information in connection with this case no later than two weeks prior to trial.

### (22) Informants and Cooperating Witnesses

If the Government determines that there is a confidential informant who has information that is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the Government will either disclose the identity of the informant or submit the

1  informant's identity to the Court for an in-chambers inspection. See <u>Roviaro</u> v. <u>United States</u>, 353

2  U.S. 53, 60- 61 (1957); <u>United States</u> v. <u>Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997).

3       **(23)** <u>**Bias by Informants or Cooperating Witnesses**</u> – As discussed above, the

4  Government is unaware of any informants or cooperating witnesses in this case.

5       **(24)** <u>**Henthorn Material**</u> – The Government will comply with <u>United States v. Henthorn</u>,

6  931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal

7  investigation and prosecution review the personnel files of the federal law enforcement inspectors,

8  officers, and special agents whom the Government intends to call at trial and disclose information

9  favorable to the defense that meets the appropriate standard of materiality.  <u>United States v. Booth</u>,

10  309 F.3d 566, 574 (9th Cir. 2002) (<u>citing</u> <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir.

11  1992).   If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating

12  information in the personnel files is "material, the information will be submitted to the Court for

13  an <u>in</u> <u>camera</u> inspection and review.

14       **(25)**    <u>**Training of Relevant Law Enforcement Officers**</u>

15       The Government strenuously objects to providing to Defendant a copy of all policies,

16  training instructions, and manuals issued by all law enforcement agencies involved in this case.

17  The requested policies, training instructions, and manuals are irrelevant and do not fall within the

18  scope of Rule 16, or any other statutory or Constitutional disclosure provision.  Even if one or

19  more of the inspectors, officers, or special agents violated his or her own administrative

20  regulations, guidelines, or procedures, such violations would not result in the exclusion of

21  evidence if Defendant's Constitutional and statutory rights were not violated in this case.  <u>United</u>

22  <u>States v. Caceres</u>, 440 U.S. 741, 744 (1979); <u>United States v. Hinton</u>, 222 F.3d 664 (9th Cir. 2000).

23       **(26)**    <u>**Performance Goals and Policy Awards**</u>

24       The Government strenuously objects to providing Defendant with information regarding

25  the agency standards used for measuring, compensating, or reprimanding the conduct of all law

26  enforcement officers involved in this case.  The requested information regarding the agency

27  standards used for measuring, compensating, or reprimanding the conduct of the law enforcement

28

1    officers is irrelevant and does not fall within the scope of Rule 16, exculpatory evidence under

2    Brady, impeachment evidence under Giglio, or any other authority governing disclosure.

3    **(27)    Opportunity to Weigh, View, and Photograph Evidence Seized**

4    The United States has complied and will continue to comply with Rule 16(a)(1)© in

5    allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

6    evidence which is within the possession, custody or control of the United States, and which is

7    material to the preparation of Defendant's defense or are intended for use by the United States as

8    evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

9    The United States, however, need not produce rebuttal evidence in advance of trial. United

10    States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).  However,

11    because this is a Deported Alien Found in the United States case, the United States does not

12    anticipate that there is any evidence that has been weighed or needs to be weighed for this case.

13    As such, the defendant's motion to weigh any evidence should be denied.

14    **III**

15    **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

16    Defendant moves this Court for an order suppressing any statements because they were

17    allegedly made as a result of an invalid waiver of his rights pursuant to Miranda v. Arizona, 384

18    U.S. 436 (1966).  As explained further below, the United States does not believe that a suppression

19    hearing is necessary to prove admissibility; however, if the Court chooses to hold an evidentiary

20    hearing on Defendant's motion, the United States will prove that Defendant's statements while

21    he was in the field were voluntary, defendant was not subject to custodial interrogation, and the

22    statements are, therefore, admissible.  As to the statements that the defendant made while he was

23    in custody, they were made after he was properly advised of his Miranda rights and he agreed to

24    waive those rights.  Moreover, any evidence derived from Defendant's statements should not be

25    suppressed because the evidence was properly obtained without any due process violation.

26    **1. Deny Motion Because Defendant Failed To Comply With The Local Rules**

27    This Court can and should deny Defendant's motion without a suppression hearing. Under

28    Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule

13    Criminal Case No. 08CR1694-WQH

47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) (defendant forfeited right to evidentiary hearing on motion to suppress by not properly submitting declaration pursuant to similar local rule in Central District of California); United States v. Moran- Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in this case. Cf. United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted). Defendant's motion to suppress statements should be denied.

**2. Defendant Was Not In Custody When He Made Field Admissions**

When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement thus has two components: (1) custody, and (2) interrogation. Id. at 477-78. Whether a person is in custody is measured by an objective standard. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). A court must examine the totality of circumstances and determine "whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." United States v. Booth,

669 F.3d 1231, 1235 (9th Cir. 1981); see also United States v. Beraun-Perez, 812 F.2d 578, 580 (9th Cir. 1980). Factors relevant to this determination are "1) the language used to summon the individual; 2) the extent to which the defendant is confronted with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the detention; and 5) the degree of pressure applied to detain the individual." Id. (citation omitted).

The Supreme Court held that in the "general interest of effective crime prevention and detection...a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 (1968). This authorized investigatory detention or stop falls short of custody when a Border Patrol agent does not have enough information to execute an arrest, and must investigate further through brief, routine questioning about citizenship and immigration status. See United States v. Brignoni-Ponce, 422 U.S. 873, 878-88 (1975); United States v. Galindo-Gallegos, 244 F.3d 728, 731-32 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001).

The case of Florida v. Royer, 460 U.S. 491 (1983), is instructive. In Royer, two police detectives at the Miami International Airport were observing Royer and thought he fit a "drug courier profile." As Royer walked over to the airline boarding area, the two detectives approached him, identified themselves as police officers, and asked if Royer had a "moment" to speak with time. Royer said, "Yes." Id. at 493-494. Upon request, Royer produced his airline ticket and his driver's license. When asked why the ticket was in the name of "Holt," instead of the name "Royer," as on his license, Royer said a friend had made the reservation in the other name. Royer was noticeably more nervous during this conversation, whereupon the detectives told him they were narcotics investigators and that they suspected him of transporting narcotics. Id. at 494. The detectives then asked Royer to accompany them to a room 40 feet away, but kept his ticket and identification. Royer said nothing, but went with them. Id.

In deciding the case, the Supreme Court noted:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person

is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. (Citations omitted). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. (Citation omitted).

Id. at 497-98 (citations omitted).

Finally, the Ninth Circuit decided this issue in Benitez-Mendez v. Immigration and Naturalization Service, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer approached and questioned a worker in a field after a number of other workers had fled upon seeing the Border Patrol. The Ninth Circuit found that no seizure had taken place in regard to the initial questioning of the individual by the Border Patrol. The Court stated that "[f]rom the record, it does not appear that the Border Patrol officer's initial encounter with petitioner amounted to a seizure under the Anderson test. The officer approached the petitioner in an open field and asked him several questions to which he responded voluntarily. There is no evidence of the use of physical force, a display of a weapon, or the threatening presence of several officers." Id. at 1311.

Detaining a person for routine border questioning is not custodial. United States v. Troise, 796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld Judge Gonzalez's denial of a defendant's motion to suppress his field statements). In Galindo-Gallegos, patrol agents apprehended the defendant and others running near the Mexican border. Once they had the 15 or 20 people seated, an agent asked them what country they were from and whether they had a legal right to be in the United States. Id. The defendant said that he was from Mexico and had no such right. Id. The order Patrol agents did not advise the group of their Miranda rights prior to this questioning. Id. After the defendant admitted that he was an alien illegally in the United States, he and the others were handcuffed and put into one of the vehicles. Id. The Ninth Circuit affirmed the district court's decision not to suppress the defendant's field statements. Id.

This case is analogous to Royer, Benitez-Mendez, and Galindo-Gallegos. Here, a Border Patrol agents responded to information that a person had climbed over the international boundary

fence in an agricultural field area.  There, he found the defendant, and identified himself as a Border Patrol agent. The agent then conducted a field interview of the defendant, Arvin Espinoza-Morales, as to his citizenship and right to be in the United States. Defendant responded that he was a citizen of Mexico with no legal right to be in the United States. See <u>Pennsylvania</u> v. <u>Muniz</u>, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the

court to be legitimate" and admissible).

Defendant's field admissions were made during a brief investigatory stop. See, e.g., <u>United States</u> v. <u>Brignoni-Ponce</u>, 422 U.S. 873, 878-89 (1975) (noting that it is well established that law enforcement may make a brief investigatory stop and ask questions about citizenship and immigration status); <u>United States</u> v. <u>Woods</u>, 720 F.2d 1022, 1029 (9th Cir. 1983) (holding that persons subjected to brief investigatory detentions are not entitled to Miranda warnings). Defendant answered those questions voluntarily. The record is devoid of any suggestion that the agents physically restrained Defendant or restricted his liberty in any meaningful way. Further, the fact that officers were armed or displayed badges does not turn a consensual encounter into a custodial situation. See <u>United States</u> v. <u>Drayton</u>, 536 U.S. 194, 204-205 (2002). During this questioning, Defendant was not placed in handcuffs or searched. There is simply nothing to suggest that Defendant was in custody during his field interview and his statements to officers in the field are admissible at trial.  For all of the foregoing reasons, the Court should deny Defendant's motion to suppress all statements.

**3.      Defendant's Post Miranda Statement were Voluntary**

A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows that the statement was made after an advisement of <u>Miranda</u> rights, and that the statement was not elicited by improper coercion.  See <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should not be found in the "absence of police overreaching").

1        A valid <u>Miranda</u> waiver depends on the totality of the circumstances, including the

2    background, experience, and conduct of the defendant. <u>North Carolina v. Butler</u>, 441 U.S. 369,

3    374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

4    awareness of both the nature of the right being abandoned and the consequences of the decision

5    to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). The government bears the burden

6    of establishing the existence of a valid <u>Miranda</u> waiver.  <u>North Carolina v. Butler</u>, 441 U.S. at

7    373.  In assessing the validity of a defendant's <u>Miranda</u> waiver, the court should analyze the

8    totality of the circumstances surrounding the interrogation.  <u>See Moran v. Burbine</u>, 475 U.S. at

9    421.  Factors commonly considered include: (1) the defendant's age (<u>see</u> <u>United States v. Doe</u>,

10   155 F.3d 1070, 1074-75 (9th Cir. 1998) (<u>en banc</u>)) (valid waiver because the 17-year old defendant

11   did not have trouble understanding questions, gave coherent answers, and did not ask officers to

12   notify parents); (2) the defendant's familiarity with the criminal justice system (<u>see</u> <u>United States</u>

13   <u>v. Williams</u>, 291 F.3d 1180, 1190 (9th Cir. 2002)) (waiver valid in part because defendant was

14   familiar with the criminal justice system from past encounters); (3) the explicitness of the <u>Miranda</u>

15   waiver (<u>see</u> <u>United States v. Bernard S.</u>, 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written <u>Miranda</u>

16   waiver is "strong evidence that the waiver is valid"); <u>United States v. Amano</u>, 229 F.3d 801, 805

17   (9th Cir. 2000) (waiver valid where <u>Miranda</u> rights were read to defendant twice and defendant

18   signed a written waiver)); and (4) the time lapse between the reading of the <u>Miranda</u> warnings and

19   the interrogation or confession (<u>see</u> <u>Guam v. Dela Pena</u>, 72 F.3d 767, 769-70 (9th Cir. 1995))

20   (valid waiver despite 15-hour delay between <u>Miranda</u> warnings and interview).

21       In this case, Defendant's post-arrest confessions should not be suppressed because they

22   were preceded by a knowing, voluntary, and intelligent <u>Miranda</u> waiver.  Agents advised

23   Defendant of his <u>Miranda</u> rights.  Defendant knowingly waived his <u>Miranda</u> rights and agreed to

24   answer questions without the presence of an attorney.  Defendant is familiar with the criminal

25   justice system as a result of his prior arrests and convictions. He verbally stated that he understood

26   his rights and was willing to be interviewed without an attorney present and he signed a waiver

27   of rights expressing her decision to speak with agents.  Defendant's post-<u>Miranda</u> interview

28   immediately followed his waiver of rights. This entire exchange was videotaped.  There is no

1    allegation or evidence of any physical or psychological coercion by any Government agents.

2    Based on the totality of the circumstances, Defendant's statements were the product of a knowing,

3    intelligent, voluntary waiver of his <u>Miranda</u> rights and therefore should not be suppressed.

4                                      **IV**

5         **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

6        The Government does not object to the granting of leave to file further motions as long as

7    the further motions are based on newly discovered evidence or discovery provided by the

8    Government subsequent to the instant motion at issue.

9                                        **V**

10                       **CONCLUSION**

11        For the foregoing reasons, the Government requests that the Court deny Defendant's

12    motions, except where unopposed.

13

       DATED: August 14, 2008

14

15                                       Respectfully submitted,

16                                       KAREN P. HEWITT
                                          United States Attorney

17                                   /s/ *Caroline P. Han*
                                          CAROLINE P. HAN

18                                           Assistant United States Attorney
                                          Attorneys for Plaintiff

19                                           United States of America

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 08CR1694-WQH |
| Plaintiff, ) | |
| ) | CERTIFICATE OF SERVICE |
| v. ) | |
| RICARDO HERRERA-ARTEAGA, ) | |
| Defendant. ) | |
| ———————————————— ) | |

IT IS HEREBY CERTIFIED THAT:

     I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL DISCOVERY, TO SUPPRESS STATEMENTS, AND FOR LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     **Robert Schroth, Sr.**
     *Attorney for defendant*

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

     None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on August 14, 2008

                         /s/ *Caroline P. Han*
                         CAROLINE P. HAN